# United States Court of Appeals
## For the First Circuit

No. 12-1542

UNITED STATES OF AMERICA,

Appellee,

v.

JOHN CORREY,

Defendant, Appellant.


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, U.S. District Judge]


Before

Thompson, Selya, and Lipez,
Circuit Judges.


Robert Herrick for appellant.
John A. Matthews II, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and Nelson Pérez-Sosa, Assistant United States Attorney, were on brief, for appellee.


December 3, 2014

**THOMPSON, Circuit Judge.** This is defendant-appellant John Correy's third visit to this court, but his first solo appearance. See United States v. Correy, 570 F.3d 373 (1st Cir. 2009); United States v. Casas, 425 F.3d 23 (1st Cir. 2005). He asks us to reconsider his sentence a third time because the sentencing judge failed to follow this court's instructions on remand. We agree, so we vacate his sentence and remand for proceedings consistent with this opinion.

## I. BACKGROUND

We set forth succinctly the facts and procedural history relevant to this appeal. Readers seeking greater detail may wish to consult our prior opinions. See Correy, 570 F.3d at 375-77; Casas, 425 F.3d at 29.

On March 21, 1994, Drug Enforcement Administration agents stopped a vehicle containing 81 kilograms of cocaine at the San Juan airport. An investigation followed, exposing the vast drug conspiracy involved in this case.

On August 8, 1996, the government charged 60 defendants, including Correy, with conspiracy to distribute 1400 grams of heroin and 9445 kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count 1). The government further charged Correy and several co-defendants with possession of 36 kilograms of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count 4). Correy and one

co-defendant were also charged with the intentional killing of two people, in violation of 21 U.S.C. § 848(e)(1) and 18 U.S.C. § 2 (Counts 5 and 6).

On December 14, 1999, following a seven-month jury trial before U.S. District Judge Carmen Consuelo Vargas de Cerezo, Correy and his co-defendants were convicted of Count 1, conspiracy to distribute heroin and cocaine. Correy was acquitted of Counts 4, 5, and 6. At trial, Thomas Martínez and Israel Pérez-Delgado, two leading figures in the conspiracy who pleaded guilty and received lighter sentences, testified against Correy and his co-defendants. Much of Correy's and his co-defendants' appeals has hinged on the credibility and weight afforded these witnesses' testimony.

## A. First Sentencing and Appeal

Due to a backlog in the trial court's docket, the case was reassigned to U.S. District Judge Héctor Laffitte for sentencing. Judge Laffitte made individual drug-quantity determinations at sentencing based on his review of the record, relying heavily on leader Martínez's testimony. On May 9, 2002, he found Correy responsible for over 150 kilograms of cocaine, resulting in a base offense level of 38. He added a two-level enhancement for possession of a weapon, raising Correy's total offense level to 40. Correy's past offenses placed him in criminal history category VI. Out of a U.S. Sentencing Guidelines ("Guidelines") range of 360 months to life, Judge Laffitte

sentenced Correy to 480 months of imprisonment, followed by seven years of supervised release.

Correy and his co-defendants appealed on several grounds. On October 7, 2005, this court affirmed their convictions, as well as the statutory maximums to which they were subjected, but remanded their cases for resentencing. Casas, 425 F.3d at 67. We based our remand of Correy's sentence on the probation department's failure to timely serve him with a revised presentence report making specific drug-quantity findings grounded in the record, in violation of Federal Rule of Criminal Procedure 32(e),[1] which Correy had challenged as part of a Booker claim.[2] Casas, 425 F.3d at 57 n.43, 61, 64-65. On remand, we "instructed the resentencing [judge] to review the entire record, making [his] own credibility determinations in order to determine drug quantity." Correy, 570 F.3d at 376 (citing Casas, 425 F.3d at 64 n.56). We flagged particular concerns about witness Martínez's credibility and the sentencing judge's flawed interpretation of the jury verdict as crediting his testimony wholesale, when in fact the jury had made certain findings inconsistent with that testimony. Casas, 425 F.3d

---

[1] Rule 32(e) provides that "[t]he probation officer must give the presentence report to the defendant, the defendant's attorney, and an attorney for the government at least 35 days before sentencing unless the defendant waives this minimum period." Fed. R. Crim. P. 32(e)(2).

[2] United States v. Booker, 543 U.S. 220, 245 (2005), held that the Guidelines must be treated as advisory, rather than mandatory.

at 64 n.56.  We further noted that the trial judge had labeled witness Pérez's testimony "dubious," id. at 53-54, and that Pérez's account conflicted with that of Martínez, id. at 45.  Accordingly, it should have been clear on remand that the sentencing judge had to examine both Martínez's and Pérez's credibility.  See Correy, 570 F.3d at 379.

**B. Second Sentencing and Appeal**

At a resentencing hearing on June 9, 2006, Judge Laffitte found Correy responsible for at least 908 kilograms of cocaine, again resulting in a base offense level of 38.  Judge Laffitte again added a two-level enhancement for possession of a weapon, for a total offense level of 40, and placed Correy in criminal history category VI.  He then re-imposed Correy's 480-month sentence and seven-year supervised release term.

On June 18, 2009, this court again vacated Correy's and his co-defendants' sentences.  Id. at 374.  We found that, as to all defendants, the sentencing judge "did not heed our instruction" to thoroughly review the record in order to evaluate witnesses' credibility and make individualized drug-quantity determinations, "but rather persisted in [his] view that the jury verdict was controlling" and "categorically refuse[d] to engage in a credibility assessment."  Id. at 379-81.  Further, as to Correy, the sentencing judge relied on a clearly deficient presentence report which, "[i]ncredibly," was "the exact same [report]" as was

used at his prior sentencing, and which "simply included allegations copied from the indictment" rather than providing the individualized, record-based assessment that this court demanded. Id. at 382-83. On remand, we "insist[ed]" that the sentencing judge resolve these issues. Id. at 402.

## C. Third Sentencing

On July 6, 2011, the probation department filed an amended presentence report in preparation for resentencing. After summarizing trial testimony related to Correy's conduct, the report assigned Correy responsibility for over 150 kilograms of cocaine and recommended offense levels consistent with Correy's previous sentences. Correy objected, challenging the credibility of the testimony the probation department relied on. He further claimed that the government was unable to prove he was responsible for more than five kilograms of cocaine, though he conceded that his conduct involved 3.5 to 5 kilograms of cocaine.

On October 24, 2011, following Judge Laffitte's retirement, U.S. District Judge Gustavo A. Gelpí presided over Correy's third sentencing. Relying on the amended presentence report, and interpreting this court's remand order as preventing him from making a finding below five kilograms of cocaine, Judge Gelpí found Correy responsible for between five and fifteen kilograms of cocaine, resulting in a base offense level of 32. He declined to grant Correy a two-level reduction for acceptance of

-6-

responsibility and added enhancements for Correy's possession of a weapon and career offender status, raising Correy's total offense level to 37 and placing him in criminal history category VI. Out of a Guidelines range of 360 months to life, Judge Gelpí sentenced Correy to an incarcerative term of 360 months followed by seven years of supervised release.

On October 31, 2011, Correy filed a motion under Federal Rule of Criminal Procedure 35(a) to correct his sentence, arguing that Judge Gelpí erred by failing to consider prosecutorial misconduct during his trial as justification for a downward departure in his sentence.[3] Judge Gelpí denied the motion on the grounds that (1) Correy had waived the issue by not raising it at the October 24 sentencing hearing, and (2) the district court lacked jurisdiction to revisit the sentence pursuant to Rule 35(a).

This appeal followed.

## II. ANALYSIS

Before us, Correy challenges his sentence on four grounds: First, he says that Judge Gelpí failed to follow this court's instruction to make individualized, record-based drug-quantity findings on remand. Second, he claims that Judge Gelpí erroneously refused to consider his request for an acceptance-of-

---

[3] Rule 35(a) permits a district judge to correct a sentence within fourteen days after sentencing if it "resulted from arithmetical, technical, or other clear error." Fed. R. Crim. P. 35(a).

responsibility sentence reduction. Third, he contends that his sentence was procedurally flawed and substantively unreasonable. Fourth, he says that Judge Gelpí wrongly denied his Rule 35(a) motion for correction of sentence. But because we remand based on Correy's first challenge, we need not address the remainder.

## A. Individualized Drug-Quantity Determination

Correy first contends that Judge Gelpí refused to follow this court's order to make an individualized drug-quantity finding by reviewing the record and assessing witness credibility upon remand. Correy says Judge Gelpí mistakenly concluded that he lacked authority to find Correy personally responsible for under five kilograms of cocaine based on this court's determination that the conspiracy-wide amount was five kilograms or more. As a result, Correy says, Judge Gelpí improperly declined to consider his claim that he was individually responsible for only 3.5 to 5 kilograms of cocaine.

Sentences in drug-conspiracy cases depend heavily on the amount and type of drugs involved. United States v. Cintrón-Echautegui, 604 F.3d 1, 5 (1st Cir. 2010) (citing United States v. Sepulveda, 15 F.3d 1161, 1196-97 (1st Cir. 1993)). When sentencing a drug-conspiracy participant under the Guidelines, the sentencing judge "must make an individualized finding concerning the quantity of drugs attributable to, or reasonably foreseeable by, the

-8-

offender."[4]  Id. (citing United States v. Colón-Solís, 354 F.3d 101, 103 (1st Cir. 2004)); see also United States v. Ramírez-Negrón, 751 F.3d 42, 47-48 (1st Cir.), cert. denied, 135 S.Ct. 276 (2014).  This is so even though "we derive the applicable statutory maximum in a drug conspiracy case from a conspiracy-wide perspective."[5]  Colón-Solís, 354 F.3d at 103 (emphasis added); see also Ramírez-Negrón, 751 F.3d at 49 n.4.  Absent "an individualized finding, the drug quantity attributable to the conspiracy as a whole cannot automatically be shifted to the defendant" for the purpose of calculating a Guidelines offense level.  Colón-Solís, 354 F.3d at 103.

---

[4] "[F]actual findings made for purposes of applying the Guidelines, which influence the sentencing judge's discretion in imposing an advisory Guidelines sentence and do not result in imposition of a mandatory minimum sentence, do not violate the rule in Alleyne [v. United States, 133 S.Ct. 2151 (2013)]." United States v. Ramírez-Negrón, 751 F.3d 42, 48 (1st Cir.), cert. denied, 135 S.Ct. 276 (2014).  In Alleyne, which was decided during the pendency of Correy's appeal, the Supreme Court held that any fact that increases the applicable mandatory minimum must be found by the jury beyond a reasonable doubt.  133 S.Ct. at 2162-63.

[5] The applicable mandatory minimum, on the other hand, depends on the drug quantity attributable to the individual defendant. Ramírez-Negrón, 751 F.3d at 49 n.4 (citing Colón-Solís, 354 F.3d at 103).  Unlike his co-defendant, see United States v. Pizarro, ___ F.3d ___, No. 12-1759, 2014 WL 6090601 (1st Cir. Nov. 14, 2014), Correy does not raise any Alleyne issues in this appeal, and we therefore address Correy's sentencing claims without regard to any possible effect of the Supreme Court's decision on his statutory sentencing range.  On remand, the district court should consider the applicability of our Alleyne jurisprudence, including our decision in Pizarro, to Correy's circumstances.

In Correy and his co-defendants' first appeal, we found that "the evidence overwhelmingly establishe[d] that the conspiracy involved at least five kilograms of cocaine," corresponding to a statutory maximum of life imprisonment. Casas, 425 F.3d at 65-66; see 21 U.S.C. § 841(b)(1)(A). In their second appeal, we clarified that this discussion pertained only to the conspiracy-wide amount and indicated "nothing about the drug quantities foreseeable to each individual, which must be used for purposes of determining each defendant's [base offense level] under the [G]uidelines." Correy, 570 F.3d at 377, 380. We proceeded to explain that the individualized "drug-quantity determination is an entirely different inquiry from that of the conspiracy-wide determination" and to reiterate that "the individualized drug-quantity issue [cannot] be resolved without assessing credibility." Id. at 380-81.

Nevertheless, at Correy's third sentencing, Judge Gelpí insisted that this court had partly tied his hands with respect to Correy's drug-quantity determination. When Correy argued that he was responsible for under five kilograms of cocaine, Judge Gelpí said:

> [I]n this particular case . . . the [c]ourt cannot go below the ten-year mandatory minimum as the Circuit noted. . . . [T]his particular defendant, as well as the others[,] are responsible for at least 5 kilos or more, which triggers the ten-year mandatory minimum. So I can't make a finding - and I'll hear from

> counsel, but I don't see how I can make a
> finding below the mandatory minimum.

In other words, Judge Gelpí thought (incorrectly under our case law, see supra note 5) that the conspiracy-wide amount of at least five kilograms represented the minimum amount attributable to Correy. He further concluded that, because a drug-quantity finding of anything between five and fifteen kilograms of cocaine would result in the same Guidelines range based on Correy's previous offenses, it would be a "somewhat moot exercise" to make credibility determinations and to state a more specific — and, he implied, likely higher — finding.

When Judge Gelpí concluded that he could not find Correy responsible for less than five kilograms of cocaine, he misinterpreted our remand order in two important ways. First, when we said that Correy and his co-defendants were responsible for at least five kilograms of cocaine, we were discussing the conspiracy-wide, statutory-maximum-controlling amount, rather than the individualized, Guidelines-range-determining amount. See Correy, 570 F.3d at 377, 380. Second, not only did we not find Correy independently responsible for at least five kilograms of cocaine, we also did not direct the sentencing judge to find as such; in fact, we explicitly stated that our conspiracy-wide conclusions "sa[id] nothing about the drug quantities foreseeable to each individual," and left the individualized assessment up to the sentencing judge. Id. at 380.

-11-

These misunderstandings led Judge Gelpí to forgo making the individualized drug-quantity finding, based on his review of the entire record and assessment of witness credibility, that this court demanded. See id. at 388, 402. As a result, he refused to consider Correy's record-based argument that he was responsible for under five kilograms of cocaine. Although Judge Gelpí's ultimate conclusion that Correy was responsible for five to fifteen kilograms of cocaine is plausible and perhaps, as Judge Gelpí suggested, even "utterly generous" under the preponderance of the evidence standard used at sentencing, this does not alter the fact that Judge Gelpí failed to perform the individualized, record-based analysis that this Court ordered him to undertake on remand.

This failure to comply with our order justifies vacatur and remand, just as it did when we considered this case in 2005 and 2011. See, e.g., id. at 384; United States v. Vigneau, 337 F.3d 62, 67 (1st Cir. 2003) ("One aspect of the law of the case doctrine is the 'mandate' rule, which requires a district court to follow the decisions of a higher court."); United States v. Ticchiarelli, 171 F.3d 24, 31 (1st Cir. 1999) (same). Accordingly, we vacate and remand Correy's case for resentencing for the third time, and — at the risk of sounding like a broken record — direct the sentencing judge to determine the drug quantity specifically attributable to Correy by thoroughly reviewing the record and assessing witness credibility.

**B. Remaining Issues**

Correy raises three further arguments on appeal.[6] However, since we are remanding Correy's case for the sentencing judge to make an individualized drug-quantity determination and to resentence Correy, we need not rule on these challenges here. See Correy, 570 F.3d at 401.

### III. CONCLUSION

For the foregoing reasons, we vacate Correy's sentence and remand his case for resentencing consistent with this opinion. As in our previous decisions in this matter, we express no view as to the ultimate sentence that should be imposed on remand. See id. at 402. Nor do we profess any opinion as to how the sentencing judge should resolve Correy's credibility challenges, or what drug quantity the judge should attribute to Correy in particular. See id. We simply insist that the sentencing judge consider and resolve the credibility and factual issues identified herein and sentence Correy based on an individualized drug-quantity assessment, as required by our case law and as ordered repeatedly on remand.

---

[6] As you will recall, Correy argues that: (1) Judge Gelpí erred by refusing to grant Correy a two-offense-level reduction for acceptance of responsibility; (2) Judge Gelpí committed procedural error when he failed to make individualized findings about Correy's offense conduct, thereby ignoring the requirements of 18 U.S.C. § 3553(a) and imposing a substantively unreasonable sentence; and (3) Judge Gelpí wrongly denied Correy's Rule 35(a) motion for correction of sentence. See text at part II, supra.