**Raymond TORRES–SANTIAGO, Petitioner**

v.

**UNITED STATES of America, Respondent.**

**Civil No. 09–1028 (DRD).
Criminal No. 01–0640(DRD).**

United States District Court,
D. Puerto Rico.

March 31, 2012.

Raymond Torres–Santiago, White Deer, PA, pro se.

Nelson J. Perez–Sosa, United States Attorneys Office, San Juan, PR, for Respondent.

## OPINION AND ORDER

DANIEL R. DOMINGUEZ, District Judge.

Pending before this Court is a motion filed by petitioner Raymond Torres–Santiago ("Petitioner") to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. (Docket No. 1), which was referred to Magistrate Judge Justo Arenas for a Report and Recommendation (Docket No. 13).

Upon review of Magistrate Judge's Report and Recommendation (Docket No. 15) and Plaintiff's opposition thereto (Docket No. 18), the Court hereby **ACCEPTS, ADOPTS** and **INCORPORATES** the Report and Recommendation as outlined below and **DENIES** Petitioner's motion filed under 28 U.S.C. § 2255.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 13, 2009, Petitioner, along with ten other defendants, were charged in a two-count indictment in that, as to the first count, defendants knowingly and intentionally combined, conspired, confederated and agreed with each other and with diverse other persons, to distribute multi-kilogram quantities of controlled substances in excess of one (1) kilogram of heroin (a Schedule I, Narcotic Drug Controlled Substance), in excess of five (5) kilograms of cocaine (a Schedule II Narcotic Drug Controlled Substance), and in excess of fifty (50) pounds of marijuana (a Schedule I Controlled Substances), as prohibited in 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. § 846. The second count was under 18 U.S.C. § 982 for forfeiture to the U.S. on any property constituted or derived from proceeds obtained directly or indirectly as a result of the activities described in the first count of the indictment. (Criminal No. 01–0640(DRD), Docket No. 2).

Pursuant to the record in Criminal No. 01–0640(DRD), the jury trial began on June 9, 2003 (Criminal No. 01–0640(DRD), Docket No. 226), but the next day, Petitioner entered a plea of guilty as a result of a plea agreement. Petitioner was sentenced on September 30, 2003 to 336 months of imprisonment (Criminal 01–0640(DRD), Docket No. 287). On October 9, 2003, Petitioner filed a notice of appeal (Criminal 01–0640(DRD), Docket No. 302). On May 26, 2006, judgment was entered by the U.S. Court of Appeals for the First Circuit. As a result of that judgment, the conviction and sentence of petitioner were affirmed. Thereafter, Petitioner filed a writ of certiorari with the U.S. Supreme Court, which was denied on October 10, 2006.[1]

On September 26, 2007, approximately eleven (11) months into the one-year statute of limitations for filing a Section 2255 Motion, Petitioner was sent to a special housing unit ("SHU") as a result of an incident report he received while in prison. Petitioner's stay at the SHU ended on January of 2008. (Docket No. 1–2, pages 31–32).

On November 8, 2007, Petitioner requested the Clerk of the Court to provide

---

**1.** Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2255(f)(1) ("AEDPA"), Petitioner had one year to file a motion to vacate, set aside or correct the sentence imposed by the district court ("Section 2255 Motion"), **which commenced on October 11, 2006 and ended on October 10, 2007.**

the necessary documents for filing a Section 2255 Motion. Nonetheless, by such date the one-year statute of limitations had expired almost one full month before Petitioner sent his request to the Clerk of the Court. (Docket No. 1–2, page 28). Thereafter, Petitioner alleges that various other unfortunate events further prevented him from filing a Section 2255 Motion. (Docket No. 1–2, page 32). Nonetheless, those attempts were made after October of 2007, well after the statute of limitations had already run on Petitioner for filing his Section 2255 Motion.

On January 13, 2009, Petitioner filed a Section 2255 Motion alleging that Petitioner's guilty plea was not voluntary or with understanding of the nature of the charges and the consequences to the guilty plea; and that Petitioner's legal counsel was ineffective because Plaintiff's counsel failed to: (a) raise the *Apprendi*[2] error; (b) object to the calculations of the controlled substances quantities; (c) object to the unlawful sentencing enhancements; and (d) present mitigating evidence at Petitioner's sentencing proceeding. (Docket No. 1).

On July 8, 2009, the government filed a response in opposition to Petitioner's Section 2255 Motion. (Docket No. 6). In their opposition, the government alleged that Petitioner failed to meet the criteria of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), for purposes of establishing ineffective assistance of counsel; that Petitioner understood the consequences of accepting the plea agreement; that Petitioner accepted the plea voluntarily and without reservations; and that Petitioner was satisfied

with his counsel. In support of such allegations, the government quoted a few portions of Petitioner's testimony during the sentencing and change of plea hearings. Specifically, the government quoted Petitioner's responses to the Court's inquiries in connection with Petitioner's acceptance of the quantity of the drugs; Petitioner's satisfaction with his legal representation; the translation of the plea agreement documents by Petitioner's counsel; Petitioner's understanding of the plea agreement and its terms; and Petitioner's voluntary acceptance of the plea agreement. (Docket No. 6, pages 2–4). Further, the government noted that the Court stated it could have imposed a harsher sentence to Petitioner upon remand. (Docket No. 6, page 4). Lastly, the government alleged that the instant case should be dismissed because it is time-barred. (Docket No. 6, pages 4–5).

On March 8, 2010, Petitioner filed a reply to the response rehashing all of the allegations already included in his Section 2255 Motion. (Docket No. 12).

On February 14, 2012, the Court referred Petitioner's Section 2255 Motion to Magistrate Judge Justo Arenas. (Docket No. 13). On February 17, 2012, Magistrate Judge Arenas entered his Report and Recommendation recommending that the Court deny Petitioner's Section 2255 Motion because it is time barred; nonetheless, Magistrate Judge Arenas went on to analyze the merits of Petitioner's arguments regarding the alleged lack of a voluntary plea and ineffective legal assistance. (Docket No. 15). Magistrate Judge Arenas concluded that, based on the record of Criminal No. 01–0640(DRD), Pe-

---

**2.** *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), resolving, in general, that the Sixth Amendment right to a jury trial, incorporated against the states through the Fourteenth Amendment, prohibit-

ed judges from enhancing criminal sentences beyond statutory maximums based on facts other than those decided by the jury beyond a reasonable doubt.

titioner's allegations are without merit and that Petitioner failed to establish that his counsel's representation fell below an ob-, jective standard of reasonableness.

On March 13, 2012, Petitioner opposed the Report and Recommendation. (Docket No. 18). In his opposition, Petitioner alleged that Magistrate Judge Arenas failed to consider Petitioner's showing of reasonable or due diligence so as to warrant equitable tolling of the statute of limitations for filing a Section 2255 Motion. Lastly, Petitioner made a general objection to the Report and Recommendation in its entirety.

## II. MAGISTRATE'S REPORT AND RECOMMENDATION

The District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See also* Fed.R.Civ.P. 72(b); D.P.R. Civ. R. 72(a), Local Rules, District of Puerto Rico; and *Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). Nonetheless, an adversely affected party may contest the Magistrate Judge's Report and Recommendation by filing its objections to the recommendations made. Fed.R.Civ.P. 72(b). In such respect, 28 U.S.C. § 636(b)(1), in pertinent part, provides that:

> [w]ithin fourteen days of being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. **A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.** A judge of the court may accept, reject, or modify, in whole or in part, the

findings or recommendations made by the magistrate judge.

(Emphasis added).

■ "Absent objection, . . . [a] district court ha[s] a right to assume that [the affected party] agree[s] to the magistrate's recommendation." *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir. 1985), cert. denied, 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985). Additionally, "failure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objections are precluded upon appeal." *Davet v. Maccarone*, 973 F.2d 22, 30–31 (1st Cir.1992). *See also Henley Drilling Co. v. McGee*, 36 F.3d 143, 150–51 (1st Cir.1994) (holding that objections are required when challenging findings actually set out in a magistrate's recommendation, as well as the magistrate's failure to make additional findings); *Lewry v. Town of Standish*, 984 F.2d 25, 27 (1st Cir.1993) (stating that "[o]bjection to a magistrate's report preserves only those objections that are specified"); *Keating v. Secretary of H.H.S.*, 848 F.2d 271, 275 (1st Cir.1988); *Borden v. Sec. of H.H.S.*, 836 F.2d 4, 6 (1st Cir.1987) (holding that appellant was entitled to a de novo review, "however he was not entitled to a de novo review of an argument never raised"); *United States v. Valencia*, 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 605 (1st Cir.1980).

■ The Court, in order to accept unopposed portions of the Magistrate Judge's Report and Recommendation, needs only satisfy itself that there is no "plain error" on the face of the record. *See Douglass v. United Servs. Auto, Ass'n*, 79 F.3d 1415, 1419 (5th Cir.1996) (*en banc*) (extending the deferential "plain error" standard of review to the un-objected to legal conclusions of a magistrate judge); *see also Net-*

*tles v. Wainwright,* 677 F.2d 404, 410 (5th Cir.1982) (*en banc*) (appeal from district court's acceptance of un-objected to findings of magistrate judge reviewed for "plain error"); *Nogueras–Cartagena v. United States,* 172 F.Supp.2d 296, 305 (D.P.R.2001) (finding that the "Court reviews [unopposed] Magistrate's Report and Recommendation to ascertain whether or not the Magistrate's recommendation was clearly erroneous") (adopting the Advisory Committee note regarding FED. R.CIV. P. 72(b)); *Garcia v. I.N.S.,* 733 F.Supp. 1554, 1555 (M.D.Pa.1990) (finding that "when no objections are filed, the district court need only review the record for plain error").

■ An adversely affected party may "contest the [m]agistrate [j]udge's report and recommendation by filing objections 'within ten[3] days of being served' with a copy of the order." *United States v. Mercado Pagan,* 286 F.Supp.2d 231, 233 (D.P.R.2003) (citing 28 U.S.C. § 636(b)(1)). If objections are timely filed, the district judge shall make a *de novo* determination of those portions of the report or specified findings or recommendation to which an objection is made. *See Bonefont–Igaravidez v. International Shipping Corp.,* 659 F.3d 120 (1st Cir.2011); and *Iverson v. City of Boston,* 452 F.3d 94, 98 (1st Cir. 2006). In reviewing objections, this Court need not "consider frivolous, conclusive, or general objections." *Espada–Santiago v. Hospital Episcopal San Lucas,* Civil No. 07–2221, 2009 WL 702350 at *1 (D.P.R. 2009); *see also Howard v. Secretary of Health & Human Servs.,* 932 F.2d 505, 509 (6th Cir.1991) (holding that "[a] general objection to the entirety of the magistrate's report has the same effects as would a failure to object").

In the instant case, Petitioner objects the conclusions reached by the Magistrate Judge Arenas with respect to his findings as to the applicability of the equitable tolling provisions. Particularly, that the evidence presented by Petitioner showed that Petitioner exercised reasonable due diligence and the occurrence of exceptional circumstances that warrant the equitable tolling of the statute of limitations in AEDPA. Further, Petitioner objected to the entire Report and Recommendation in connection with the Magistrate Judge's analysis and conclusion of the merits of Petitioner's motion. Consequently, the Court reviews the portions of the Report and Recommendation to which specific objections were made *de novo* and reviews all other un-objected portions, or those portions that were generally objected, only for plain error.

### III. ANALYSIS AND DISCUSSION

#### A. Statute of Limitations and Equitable Tolling

■ "Congress enacted 28 U.S.C. § 2255 as a substitute for the traditional habeas remedy with respect to federal prisoners." *Trenkler v. United States,* 536 F.3d 85, 96 (1st Cir.2008). The AEDPA establishes a one-year limitations period for Section 2255 Motions filed by prisoners in federal custody, and run from "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1).

In this case, Petitioner's conviction became final on October 10, 2006 when the Supreme Court denied his writ of certiorari. Consequently, the one-year limitations period for filing a Section 2255 Motion expired one year later, on October 10, 2007. Petitioner filed his Section 2255 Motion on January 13, 2009. Absent equitable tolling, then the petition was untimely.

---

**3.** Per Local Rule 72(d), parties may object a magistrate judge's report and recommendation within fourteen (14) days after being served with the order.

Equitable tolling is a doctrine that "provides that in exceptional circumstances, a statute of limitations 'may be extended for equitable reasons not acknowledged in the statute creating the limitations period.'" *Neverson v. Farquharson*, 366 F.3d 32, 40 (1st Cir.2004) (quoting *David v. Hall*, 318 F.3d 343, 345–46 (1st Cir.2003)). The equitable tolling doctrine is applicable to Section 2255 Motions; however it should only be invoked sparingly and only in appropriate instances. *See Ramos–Martinez v. U.S.*, 638 F.3d 315, 322 (1st Cir.2011).

A court's power to invoke equitable tolling must be exercised case by case, and requires an analysis of the circumstances that were beyond the litigant's control that prevented [him] from promptly filing a Section 2255 Motion. *Id.* (quoting *Cordle v. Guarino*, 428 F.3d 46, 48 (1st Cir.2005)). Further, the petitioner in a Section 2255 Motion bears the burden of establishing the basis for equitable tolling. *See Ramos–Martinez*, 638 F.3d at 323. *See also Riva v. Ficco*, 615 F.3d 35, 39 (1st Cir.2010). To carry this burden, the petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Ramos–Martinez*, 638 F.3d at 323 (quoting *Holland v. Florida*, —— U.S. ——, 130 S.Ct. 2549, 2562, 177 L.Ed.2d 130 (2010) (internal quotations omitted)). Further, "[e]quitable tolling of the limitations period for filing a motion to vacate sentence is not applicable if the petitioners simply failed to exercise due diligence in preserving their legal rights." *See Barreto–Barreto v. U.S.*, 551 F.3d 95, 101 (1st Cir.2008) (quoting *Trenkler v. U.S.*, 268 F.3d 16, 25 (1st Cir.2001) (internal quotations omitted)).

### 1. Reasonable Diligence

To prove the elements of reasonable diligence, Petitioner alleges that at some unspecified time prior to September 26, 2007 (the date in which he was transferred from his prison to a SHU) he had requested the assistance of a fellow inmate who was proficient in both English and Spanish to prepare a Section 2255 Motion because he had no legal knowledge or knowledge of English to prepare it himself. Petitioner further adds that upon his transfer to the SHU, Petitioner lost contact with such fellow inmate before completing and filing his Section 2255 Motion. (Docket No. 1–2, ¶ 2 on page 31 and ¶ 13 on page 32).

Further, Petitioner avers that on November 8, 2007, he mailed a letter to the Clerk of the Court that a fellow inmate typed the day before, notifying that he was at a SHU, that he had the no legal assistance, and requesting that he be provided with the documents for filing a Section 2255 Motion. (Docket No. 1–2, page 28). Then, after being released from the SHU on January 3, 2008, Petitioner requested the case files from his former legal counsels to prepare an "intelligent § 2255 motion," and that he received most of the legal documents, though not all of them. (Docket No. 1–2, ¶¶ 6–11 on page 32).

The Court notes that in all of Petitioner's allegations and accounts of his diligence at filing the instant Section 2255 Motion, Petitioner mentions the occurrence of only one instance **before** the expiration of the one-year statute of limitations in which he allegedly requested the assistance of a fellow inmate to file a Section 2255 Motion. This only instance lacks any details as to the approximate time in which Petitioner allegedly requested the assistance of a fellow inmate for the very first time so as to show that Petitioner was indeed diligent in procuring assistance to file a timely Section 2255 Motion. All of the remaining diligences that Petitioner

performed to secure a filing of his Section 2255 Motion occurred well after the one-year statute of limitations had already expired. Had he displayed such diligence before September of 2007, Petitioner would have more likely been able to file timely, or show more reasonable diligence in trying to file a timely Section 2255 Motion. Without further allegations as to such other diligences Petitioner may have performed before September of 2007 to ensure the timely filing of a Section 2255 Motion, Petitioner cannot successfully show that he was reasonably diligent.

Based on Petitioner's accounts of the facts, the Court can only conclude that Petitioner waited until the eleventh hour to start preparing a Section 2255 Motion. The Court notes that the one-year statute of limitations began to run early on October of 2006, not on September of 2007. Petitioner should have been more diligent at requesting assistance—whether to a fellow inmate, his former counsels, a prison guard, or the Clerk of the Court—to prepare a Section 2255 Motion soon after being notified that the sentence of his conviction had become final instead of waiting until one month before the end of the statute of limitations for filing such motion. "Equitable tolling of limitations period is not intended as a device to rescue those who inexcusably sleep upon their rights." *Ramos–Martinez,* 638 F.3d at 323.

For such reasons, the Court finds that Petitioner failed to establish that he was reasonably diligent at attempting to timely file the instant Section 2255 Motion.

### 2. Extraordinary Circumstances

To support his contention that there are extraordinary circumstances in the instant case that warrant the applicability of the equitable tolling doctrine, Petitioner alleges that he was unable to timely file the instant Section 2255 Motion because: (1) the prison authorities caused a delay when they lost Petitioner's legal documents during the disciplinary proceedings that resulted in his transfer to the SHU (Docket No. 1–2, page 7); (2) Petitioner's legal counsel failed to provide the case files on time (Docket No. 1–2, page 7–8); and (3) that Petitioner does not know how to read or right in English (Docket No. 1–2, ¶ 12 on page 32).

Although all of the circumstances alleged by Petitioner have been recognized as extraordinary circumstances by federal courts under an analysis for the applicability of the equitable tolling doctrine, those circumstances alone do not warrant equitable tolling. Both reasonable diligence and extraordinary circumstance must be proven to trigger equitable tolling. Thus, although Petitioner may have been faced with extraordinary circumstances that posed obstacles to his filing of the Section 2255 Motion, the Court finds that equitable tolling is not warranted in the instant case because Petitioner failed to prove that he was reasonably diligent.

Notwithstanding even a showing that defendant warranted the more than a full year after his release from SHU, which the Court deems unreasonable on the merits, the petition is to be denied. The Court explains.

### B. Substantive Claims in Petitioner's Section 2255 Motion

As to the merits of Petitioner's allegations that his plea of guilty was not voluntary, or that he received ineffective assistance of counsel, the Court noted that Petitioner made no specific objection or claim of error in his opposition to the Report and Recommendation. Instead, Petitioner made a general objection to the entirety of the Report and Recommendation. For such reason, and based on the standard cited in Section II of the instant Opinion and Order, the Court reviewed Magistrate Judge Arenas' Report and Recommendation only for plain error.

As correctly stated by Magistrate Judge Arenas, the *Strickland*[4] analysis applies to ineffective assistance of counsel claims in the guilty plea context. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). In *Strickland*, the Supreme Court established a two-part test whereby a petitioner claiming ineffective assistance of counsel must show that counsel's performance was deficient and that the deficiency prejudiced the petitioner. *Id.*, at 687, 104 S.Ct. 2052. In the context of guilty pleas, the first test of Strickland requires that a defendant show that the advice he received from counsel to enter a guilty plea was not within the range of competence demanded of attorneys in criminal cases, thereby attacking the voluntary or intelligent character of the guilty plea accepted upon such ineffective advice of counsel. *Hill*, 474 U.S. at 58–59, 106 S.Ct. 366 (citing and quoting *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) ("Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'") and *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973) ("a defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by

showing that the advice he received from counsel was not within the standards set forth in *McMann*.'")). The second test of *Strickland* "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59, 106 S.Ct. 366. That is, the petitioner "must show that there is a reasonable probability that, but for counsels' errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

 Magistrate Judge Arenas examined the record in Petitioner's criminal case very thoroughly, and found that Petitioner failed to establish that his counsel's representation fell below an objective standard of reasonableness and that his guilty plea was not voluntary not intelligent. Magistrate Judge Arenas also found that, even if the alleged deficiencies of Petitioner's legal counsel were true, Petitioner was unable to establish that such deficiencies were prejudicial in the criminal proceedings. To the contrary, Magistrate Judge Arenas concluded that Petitioner voluntarily accepted the plea agreement and entered knowingly and voluntarily into the guilty plea;[5] that Petitioner's attorney negotiated a favorable plea agreement in light of the sentence that Petitioner may have received had the trial been continued; that Petitioner himself admitted to being satisfied with his counsel's legal representation; and that Petitioner was adequately represented by counsel. (Docket No. 15).

4. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

5. Defendant accepted both the quantity of the drugs applicable to him for sentencing purposes and the leadership status as to the conspiracy (five (5) kilograms of cocaine a month for a total of less than 150 kilograms was accepted as to the conspiracy he lead; but although the amount would have been much larger, Defendant only accepted "more than 50 but less than 150 kilograms of cocaine" at his plea agreement. (Criminal No. 01–

640(DRD), Docket No. 233, page 3). Defendant also accepted leadership of the drug organization involving more than five participants. Defendant further accepted a two (2) point enhancement as to foreseeability of use of weapons relating to the drug conspiracy. *See* the Magistrate Judge Arenas, referring to the record of the plea agreement (Docket No. 15, page 186). *See also* Plea Agreement signed by Defendant at Criminal No. 01–640(DRD), Docket No. 232, page 3 (324–405 months, recommendations of both parties of 336 months–28 years)).

The Court finds no error in Magistrate Judge Arenas' comprehensive analysis.[6]

## IV. CONCLUSION

For the reasons stated above, the Court finds that Petitioner failed to establish that this case warrants the applicability of the equitable tolling of the one-year statute of limitations for filing a Section 2255 Motion. Further, even if the case was not time barred, the Court finds that Petitioner failed to meet the requirements of *Strickland* that would warrant setting aside Petitioner's sentence for ineffective assistance of counsel, or for a lack of a voluntary or intelligent plea of guilty.

Therefore, the Court determines that the error alleged by Petitioner as to Magistrate Judge Arenas' failure to apply the equitable tolling doctrine is meritless. As to the remaining portions of Magistrate Judge Arenas' Report and Recommendation, the Court determines that they contain an apt and thoughtful analysis that is devoid of plain error.[7] Consequently, the Court **ACCEPTS, ADOPTS** and **INCORPORATES** by reference the Magistrate's Report and Recommendation (Docket No. 15) to the instant Opinion and Order.

As we have concluded that Petitioner has not satisfied the applicable *Strickland*

---

6. The Court briefly provides the highlights of the plea agreement colloquy at Criminal No. 01–640(DRD), Docket No. 348 (dated June 10, 2004 and entered on June 17, 2004) as well as the plea agreement at Criminal No. 01–640(DRD), Docket No. 232.

On June 10, 2004, Defendant and five other co-defendants pleaded guilty one day after trial had commenced. (Criminal No. 01–640, Docket Nos. 226 and 229).

At the plea agreement, Defendant accepted that he had a high school degree from a public school in Puerto Rico. (Criminal No. 01–640, Docket No. 348, page 9). Defendant further accepted that he was satisfied with Counsel Ramon Garcia, *Id.* at 13. Defendant accepted "less than 150 kilos [of cocaine]" for an offense level thirty-six (36), a two (2) level enhancement for possession of firearms and a four (4) point enhancement for supervisory role, less a two (2) point reduction for acceptance of responsibility, for a total offense level of forty (40). A criminal history assumption of II, meaning that Defendant was facing a sentencing range of 324–405 months pursuant to the U.S. Sentencing Guidelines. The parties agreed on a joint recommendation of 336 months, which was the sentence imposed. *Id.* at 36. Counsel made a representation to the Court that the signature on the plea agreement was Defendants'. Defendant accepted that the initials and signature in the plea agreement were his, and accepted that the plea agreement was translated to him, although he knew how to read and write in the English language. *Id.* at 36–39. Defendant further acknowledged that the joint

sentence recommendation was 336 months. *Id.* at 39. The plea agreement, which Defendant signed and was translated verbatim to him in verbatim fashion, clearly states that Defendant accepted responsibility for "more than 50 kilos, but not more than 150 kilos of cocaine." (Criminal No. 01–640, Docket No. 233, page 3). The sentencing recommendation at the plea agreement is for 336 months. *Id.* at 4. The Court stated for the record that, as indicted, Defendant was facing a life sentence. (Criminal No. 01–640, Docket No. 348, page 40).

Further, the government's version of the facts was the same as the four other co-defendants who were entering into a plea that day for more than 50, but not more than 150 kilograms of cocaine. *Id.* Defendant, however, had the enhancement of being the owner of the cocaine and heroin, and was the leader of the organization and of the various drug points he controlled. (Criminal No. 01–640, Docket No. 232, page 50). Defendant further carried and stored weapons to protect the organization, the operations thereof and the proceeds derived therefrom. (Criminal No. 01–640, Docket No. 348, page 50). Defendant accepted the government's version of the facts. *Id.* at 51.

Finally, the Court clarified that all co-defendants entering into a plea agreement on that day were being sentenced for cocaine and not for cocaine base. *Id.* at 45.

7. The Court need not go further "[w]here, as here, a [Magistrate] has produced a first-rate

test for ineffective assistance of counsel, the Petitioner's Section 2255 Motion (Docket No. 1) is hereby **DENIED** without the need for an evidentiary hearing. *See United States v. LaBonte*, 70 F.3d 1396, 1412–1413 (1st Cir.1995) ("A district court may dismiss a section 2255 petition without holding an evidentiary hearing if it plainly appears on the face of the pleadings that the petitioner is not entitled to the requested relief, or if the allegations, although adequate on their face, consist of no more than conclusory prognostications and perfervid rhetoric, or if the key factual averments on which the petition depends are either inherently improbable or contradicted by established facts of record."); *see also* 28 U.S.C. § 2255 (explaining that a hearing is unnecessary when the record "conclusively shows that the prisoner is entitled to no relief"). Judgment shall be entered accordingly.

For the reasons previously stated, the Court hereby denies Petitioner's request for relief pursuant to 28 U.S.C. § 2255. It is further **ORDERED** that no certificate of appealability should be issued in the event that Petitioner files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

JUSTO ARENAS, United States Magistrate Judge.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 13, 2009, petitioner Raymond Torres–Santiago and ten other defendants were charged in a two-count indictment in that he did knowingly and intentionally combine, conspire, confederate and agree with each other and with diverse other persons, to commit an offense against the United States, that is, to knowingly and intentionally distribute multi-kilogram quantities of controlled substances, that is to say, in excess of one (1) kilogram of heroin, a Schedule I, Narcotic Drug Controlled Substance, in excess of (5) kilograms of cocaine, a Schedule II Narcotic Drug Controlled Substance, and in excess of fifty (50) pounds of marijuana, a Schedule I Controlled Substances, as prohibited in 21 U.S.C. § 841(a)(1). All in violation of Title 21 United States Code Section 846. (Criminal 01–0640(DRD), Docket No. 2.) Count Two is a forfeiture count under Title 18 U.S.C. § 982.

The jury trial began on June 9, 2003. (Criminal 01–0640(DRD), Docket No. 226.) However, the next day, petitioner entered a plea of guilty as a result of a plea agreement and was sentenced on September 30, 2003 to 336 months imprisonment. (Criminal 01–0640(DRD), Docket No. 287.) Petitioner filed a notice of appeal on October 9, 2003. (Criminal 01–0640(DRD), Docket No. 302.) Judgment was entered by the United States Court of Appeals for the First Circuit on May 26, 2006. As a result of that judgment, the conviction and sentence of petitioner were affirmed. A petitioner for a writ of certiorari was denied by the Supreme Court of the United States on October 10, 2006. He had one year to file the § 2255 motion from the denial of certiorari. *See* 28 U.S.C. § 2255(f)(1). That did not happen.

This matter is before the court on motion filed by petitioner Raymond Torres–

---

work product, a reviewing tribunal should hesitate to wax longiloquence simply to hear its own words resonate." *In re San Juan Dupont Plaza Hotel Fire Litig.*, 989 F.2d 36, 38 (1st Cir.1993).

Santiago on January 13, 2009 to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. (Docket No. 1.) The government filed a response in opposition to the motion on July 8, 2009. (Docket No. 6.) Petitioner filed a reply to the response on March 8, 2010. (Docket No. 12.)

Having considered the arguments of the parties and for the reasons set forth below, I recommend that the petitioner's motion to vacate sentence be DENIED.

Before addressing the substance of his motion, petitioner notes that the reason that he was unable to timely file the petition because of a number of unfortunate reasons. The first incident that petitioner mentions is that he was given an incident report and "was sent to the Special Housing Unit (SHU) during September 2007 to January 2008." (Docket No. 1–2 at 4). He then tried to contact his attorney who never responded. He sent a letter to the district court dated November 8, 2007 (while he was in the SHU) asking for the § 2255 forms so that he could file his motion. (Docket No. 1–2 Exh. A). The Clerk of the court responded to his request on January 14, 2008. *Id.,* Exh. B. Petition then sent a request to trial and appellate counsel for paperwork and transcripts, since much of the paperwork was lost by prison authorities while he was in the SHU. By letter dated June 7, 2008, part of the record was provided to him by counsel. *Id.* Exh. C. Plea transcripts were not provided. (Docket No. 1–2 at 6.) Other attempts to obtain these documents were in vain. Again, the motion was filed in January 2009.

Finally, petitioner argues that he is uneducated and is unable to read, write or speak English, and has to depend upon other inmates for proving the necessary legal help. Thus the reason why this motion is filed out of time. Petitioner then argues equitable tolling in his memorandum of law. (Docket No. 1–2 at 6–9).

Petitioner claims that he suffered ineffective assistance of counsel since his plea was neither voluntary nor intelligent. Petitioner did not agree to the government's version of the facts, and did not agree as to the drug quantities attributed to him, the ownership of a gun by him, and the "organizer/manager" role in the offense. Petitioner had no criminal history and could not be claimed as knowledgeable of the plea process. (Docket No. 1–2 at 11.) Petitioner notes that he does not speak, read or write English and the court failed to assure that he understood all of the consequences of the guilty plea. He denied the whole version of the facts given by the government as stated in the plea agreement. His signing of the plea agreement was thus not voluntary. Petitioner also states that his counsel told him that the large quantity of drugs was not attributed to him, and neither was the possession of the gun by the co-conspirator. He admitted to playing a minor "supervisor" during one part of the conspiracy, not a manager.

Petitioner argues that he entered a plea to the conspiracy but did not agree to any quantity in particular. He does not recall the court informing him of the minimum and maximum penalties. He states that the court did not inform him of the consequences of pleading guilty. He is therefore entitled to a new trial.

Petitioner argues that his attorney failed to raise the *Apprendi* error since his sentence exceed the (default) statutory maximum of five years in relation to the marijuana offense. (Docket No. 1–2 at 14.) Because there was no specific drug quantity in the plea colloquy, the sentence could not exceed five years, the default maximum sentence for marijuana, and in any case could not exceed 20 years, the default

maximum sentence for cocaine. (Docket No. 1–2 at 16.) He notes that he has established cause and prejudice for relief since the *Apprendi* error was not raised by either trial or appellate counsel. Error was also committed since the sentence should have been based on an amount attributed to him in particular, citing *United States v. Colon–Solis*, 354 F.3d 101, 103 (1st Cir.2004).

Petitioner argues that counsel should have objected to unlawful enhancements, that is, the gun enhancement and the managerial/organizer enhancement, stressing that the court did not make a specific finding as to the latter. Petitioner argues that his attorney did not present any mitigating factors at sentencing. Petitioner concludes seeking an evidentiary hearing, and appointment of counsel. He seeks a maximum sentence of 60 months as mandated by *Apprendi*.

On July 6, 2009, the government filed a response in opposition to the petitioner's motion arguing basically that it should be summarily denied because it is untimely. (Docket No. 6). The government does not address the merits of the petition. Rather, the government notes that the issues raised by petitioner are the same issues raised at and decided by the United States Court of Appeals for the First Circuit. *See United States v. Ortiz–Torres*, 449 F.3d 61 (1st Cir.), cert. denied by *Torres–Santiago v. United States*, 549 U.S. 967, 127 S.Ct. 416, 166 L.Ed.2d 294 (2006). The court determined that the plea was voluntary and all other claims were considered by the court.

Petitioner filed a reply to the response on March 8, 2010. (Docket No. 12). Petitioner repeats his argument and notes that the period may be equitably tolled based upon the circumstances he has already stated. Petitioner criticizes the government for its brief address of the tolling

argument. Petitioner also argues that the government has confused defendants in relation to which one actually attacked the voluntariness of the plea. Petitioner raises his completely exculpatory statements to the court during the plea colloquy.

## II. LIMITATIONS PERIOD

The Antiterrorism and Effective Death Penalty Act instituted a limitations period of one year from the date on which a prisoner's conviction became final within which to seek federal habeas relief. 28 U.S.C. § 2255(f). The current petition was clearly filed over a year from the date petitioner's sentence became final and unappealable after the Supreme Court denied certiorari. However, the inquiry does not necessarily stop there.

President Clinton signed into law the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which instituted a time limitation period for the filing of motions to vacate or reduce criminal federal sentences. In its pertinent part, section 2255 reads:

A 1–year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such government action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255, ¶ 6.

 The terse argument of the United States, that the petition is time-barred, is correct. The petition does not describe any circumstances that fall within any of the exceptions which would equitably toll the limitations period of the statute. *See e.g. Ramos–Martinez v. United States,* 638 F.3d 315, 321–24 (1st Cir.2011). To carry the burden of establishing the basis for equitable tolling, the petitioner must show " ' "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented timely filing.' " *Id.* at 323, quoting *Holland v. Florida,* —— U.S. ——, 130 S.Ct. 2549, 2562, 177 L.Ed.2d 130 (2010), which in turn quotes *Pace v. DiGuglielmo,* 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005); *see Lattimore v. Dubois,* 311 F.3d 46, 55 (1st Cir.2002); *Trenkler v. United States,* 268 F.3d 16, 25 (1st Cir.2001); *Delaney v. Matesanz,* 264 F.3d 7, 15 (1st Cir.2001). There are no extraordinary circumstances present which support a favorable invocation of petitioner's entitlement to equitable relief. Petitioner was given an incident report and was sent to the Special Housing Unit (SHU) during September 2007 to January 2008. This may be it is not necessarily an extraordinary circumstance, and if it is, it is of his own doing, not some fortuitous event out of his control. If it is fortuitous, then the argument and reliance on residence in the SHU is undeveloped. In any event, the court is not required to learn under what circumstances petitioner was placed in a SHU for four months. With a flip of the nib, petitioner relates in vague terms what happened to him during the entire year of 2008 which lead to his filing the petition in 2009. There are months in late 2008 for which petitioner has not accounted in terms of convincing the court that it should make a finding of equitable tolling. There is no showing of reasonable or due diligence on the part of the petitioner in seeking relief. *See Barreto–Barreto v. United States,* 551 F.3d 95, 101 (1st Cir. 2008); *Cordle v. Guarino,* 428 F.3d 46, 48–49 (1st Cir.2005); *Akins v. United States,* 204 F.3d 1086, 1089–90 (11th Cir.2000). As in other cases where the language issue is raised, I am not ignoring the fact that petitioner does not read or write English. It taxes credulity to believe that there were no bilingual inmates, nor correctional personnel nor inmate law clerks, or jailhouse lawyers, which could assist petitioner in timely exercising his rights. Having difficulty with the English language is not an extraordinary circumstance to justify tolling the time requirement in § 2255. *Pava v. United States,* 2011 WL 1337510 at *4, citing *United States v. Montano,* 398 F.3d 1276, 1280, n. 5 (11th Cir.2005); *see Cobas v. Burgess,* 306 F.3d 441, 444 (6th Cir.2002). Petitioner's argument is simple and undeveloped notwithstanding a fellow inmate apparently writing his comprehensive and conclusory briefs. Petitioner's pleading was filed on January 13, 2009. The petition for a writ of certiorari was denied on October 10, 2006. Petitioner was required to file his 2255 motion within a year of denial of certiorari, October 10, 2007. He was in the SHU starting in September, 2007. His professed reasons for failing to file the motion within the required period are commonplace and too ethereal to weigh within a framework of extraordinary circumstances. His petition was filed fifteen months too late. One is forced to conclude that petitioner's claim is time-barred. *See Trenkler v. United States,* 268 F.3d at 24–27.

Nevertheless, I discuss the merits of the petition with the clear admonition that pe-

titioner's allegations related to the merits have been or could have been considered by the court of appeals, and this court cannot operationally review decisions by the court of appeals. In any event, the petition is definitely time-barred.

## III. ANALYSIS

 Under 28 U.S.C. § 2255, a federal prisoner may move for post conviction relief if:

the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . . .

28 U.S.C. § 2255(a); *Hill v. United States,* 368 U.S. 424, 426–27 n. 3, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962); *David v. United States,* 134 F.3d 470, 474 (1st Cir.1998). The burden is on the petitioner to show his or her entitlement to relief under section 2255, *David v. United States,* 134 F.3d at 474, including his or her entitlement to an evidentiary hearing. *Cody v. United States,* 249 F.3d 47, 54 (1st Cir.2001) (quoting *United States v. McGill,* 11 F.3d 223, 225 (1st Cir.1993)). Petitioner has sought an evidentiary hearing. It has been held that an evidentiary hearing is not necessary if the 2255 motion is inadequate on its face or if, even though facially adequate, "is conclusively refuted as to the alleged facts by the files and records of the case." *United States v. McGill,* 11 F.3d at 226 (quoting *Moran v. Hogan,* 494 F.2d 1220, 1222 (1st Cir.1974)). "In other words, a '§ 2255 motion may be denied without a hearing as to those allegations which, if accepted as true, entitle the movant to no relief, or which need not be accepted as true because they state conclusions instead of facts, contradict the record, or are 'inherently incredible.' ' " *United States v.*

*McGill,* 11 F.3d at 226 (quoting *Shraiar v. United States,* 736 F.2d 817, 818 (1st Cir. 1984)).

### Ineffective Assistance of Counsel

"In all criminal prosecutions, the accused shall enjoy the right to . . . the Assistance of Counsel for his defence." U.S. Const. amend. 6. To establish a claim of ineffective assistance of counsel, a petitioner "must show that counsel's performance was deficient," and that the deficiency prejudiced the petitioner. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "This inquiry involves a two-part test." *Rosado v. Allen,* 482 F.Supp.2d 94, 101 (D.Mass.2007). "First, a defendant must show that, 'in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.' " *Id.* (quoting *Strickland v. Washington,* 466 U.S. at 690, 104 S.Ct. 2052.) "This evaluation of counsel's performance 'demands a fairly tolerant approach.' " *Rosado v. Allen,* 482 F.Supp.2d at 101 (quoting *Scarpa v. Dubois,* 38 F.3d 1, 8 (1st Cir.1994)). "The court must apply the performance standard 'not in hindsight, but based on what the lawyer knew, or should have known, at the time his tactical choices were made and implemented.' " *Rosado v. Allen,* 482 F.Supp.2d at 101 (quoting *United States v. Natanel,* 938 F.2d 302, 309 (1st Cir.1991)). The test includes a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Smullen v. United States,* 94 F.3d 20, 23 (1st Cir.1996) (quoting *Strickland v. Washington,* 466 U.S. at 689, 104 S.Ct. 2052). "Second, a defendant must establish that prejudice resulted 'in consequence of counsel's blunders,' which entails 'a showing of a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been differ-

ent." ' " *Rosado v. Allen,* 482 F.Supp.2d at 101 (quoting *Scarpa v. Dubois,* 38 F.3d at 8) (quoting *Strickland v. Washington,* 466 U.S. at 694, 104 S.Ct. 2052); *see Padilla v. Kentucky,* —— U.S. ——, 130 S.Ct. 1473, 1482, 176 L.Ed.2d 284 (2010) (quoting *Strickland v. Washington,* 466 U.S. at 688, 104 S.Ct. 2052): *Argencourt v. United States,* 78 F.3d 14, 16 (1st Cir.1996); *Scarpa v. Dubois,* 38 F.3d 1, 8 (1st Cir.1994); *López–Nieves v. United States,* 917 F.2d 645, 648 (1st Cir.1990) (citing *Strickland v. Washington,* 466 U.S. at 687, 104 S.Ct. 2052); *Mattei–Albizu v. United States,* 699 F.Supp.2d 404, 407 (D.P.R.2010). However, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Argencourt v. United States,* 78 F.3d at 16 (quoting *Strickland v. Washington,* 466 U.S. at 691, 104 S.Ct. 2052). Thus, "[c]ounsel's actions are to be judged 'in light of the whole record, including the facts of the case, the trial transcript, the exhibits, and the applicable substantive law.' " *Rosado v. Allen,* 482 F.Supp.2d at 101 (quoting *Scarpa v. Dubois,* 38 F.3d at 15). The defendant bears the burden of proof for both elements of the test. *Cirilo–Muñoz v. United States,* 404 F.3d 527, 530 (1st Cir.2005), *cert. denied,* 525 U.S. 942, 119 S.Ct. 363, 142 L.Ed.2d 300 (1998), (citing *Scarpa v. Dubois,* 38 F.3d at 8–9).

In *Hill v. Lockhart* the Supreme Court applied *Strickland's* two-part test to ineffective assistance of counsel claims in the guilty plea context. *Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) ("We hold, therefore, that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel."). As the *Hill* Court explained, "[i]n the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a

restatement of the standard of attorney competence already set forth in [other cases]. The second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart,* 474 U.S. at 58–59, 106 S.Ct. 366. Accordingly, petitioner would have to show that there is "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59, 106 S.Ct. 366.

■ It is clear that a district court may not consider a collateral review of a sentence if the grounds for such review have been raised and decided by an appellate or those grounds could have been raised. The appellate court in this case noted that because the appellants' convictions and sentences in this case followed admissions of guilt, the judges glean the pertinent facts from the change-of-plea colloquies, the plea agreements, the presentence reports and the transcripts of the sentencing and change of plea hearings. *United States v. Ortiz–Torres,* 449 F.3d at 68, citing *United States v. Colon–Solis,* 354 F.3d at 102. Petitioner asked the court to remand the case for resentencing under *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). *See United States v. Ortiz–Torres,* 449 F.3d at 81.

Petitioner takes issue with the government's referencing appellate action attributed to other appellants and not to him. Therefore I enter into some details of the appellate court's decision, a decision which compartmentalized the arguments of the different defendants in Criminal No. 01–0640 but which also referenced the actions of the court during the plea colloquy and sentencing as to all defendants who appealed their convictions. Appellate coun-

sel was Bruce Green, Esq. From Massachusetts. The court addressed the appeals of five of the defendants.

Two appellants addressed the issue of voluntariness of the plea. Petitioner did not. *United States v. Ortiz–Torres*, 449 F.3d at 68. Five appellants, including petitioner, raised *Booker* claims. *Id.* at 81. Because those claims were not preserved, the court reviewed the sentences for plain error. Petitioner stipulated (although he argues that he did not) to being held responsible for between 50 and 150 kilograms of cocaine for a base offense level of 36. See U.S.S.G. § 2D1.1(c)(2)(2002). He stipulated to a 2–level enhancement for possession of a firearm in relation to the charged crime, a 4–level enhancement for a leadership role, and a 2–level reduction for acceptance of responsibility. U.S.S.G. § 2D1.1(b)(1), 3B1.1(a), 3E1.1(a) (2002). *United States v. Ortiz–Torres*, 449 F.3d at 82. Petitioner had a Criminal History Category of I. Thus the applicable sentencing range would have been between 292 to 365 months pursuant to U.S.S.G. § 5G1.1(b). That was based upon a total offense level of 40 according to the presentence investigation report. Petitioner was sentenced to 336 months imprisonment in accordance with the plea agreement (Crim. No. 01–0640, docket No. 287). Petitioner argued that consideration of sentencing factors of 18 U.S.C. § 3553(a) would have resulted in a more lenient sentence under an advisory guideline regime. The justification for such reduction was missing from

his argument. *United States v. Ortiz–Torres*, 449 F.3d at 82. The court noted, "... the district court's comments at sentencing suggest that Torres–Santiago would be far more likely to receive a harsher sentence, not a more lenient one, on remand." *United States v. Ortiz–Torres*, 449 F.3d at 68, n. 19.[1] This was a negotiated plea agreement. It was a package deal and the trial court was cautious and meticulous in assuring that each defendant was pleading guilty voluntarily, questioning each of them individually, asking them if they were coerced. *United States v. Ortiz–Torres*, 449 F.3d at 68–69. The plea agreement was exactly what was negotiated and while petitioner was put on notice that the court was not bound by the plea agreement and the recommendation of the prosecution, he received the sentenced bargained for. Indeed it is clear that the prosecutor did not deviate from the agreed-to recommendation. Petitioner at sentencing was well aware of the evidence petitioner was facing. Now he argues that nothing was the way it appeared to be and nothing happened the way it appeared to happen.

At the plea hearing on June 10, 2003, petitioner and four other defendants were placed under oath. (Docket No. 348 at 3.)[2] The judge explained to the five that if they did not understand a question, they could consult with counsel since it was important to understand each question before it was answered. Petitioner understood that. (Docket No. 348 at 6.) The

1. "Now, I'm going to respect that [plea] agreement, but I want you all to know that I barely accept it ... because this gentleman has a few, and I mean a few murders pending in the state court.

 You know very well that we're doing him a favor by sentencing him today because I would very well, say, let's wait until what happens with those murders, and when he comes back, if he's ever found in one, he's serving life. But that was the agreement and

I'm going to respect it. But I want him to know that I have the option today to postpone until all criminal cases are finished in the local court. And if he had any murder or any manslaughter this is a lifer, you know that."

2. Docket No. 348 relates to the transcript of the change of plea hearing held on June 10, 2003 before the court. (Crim No. 01–0640(DRD)).

importance of answering questions truthfully was stressed to all by the judge. Petitioner, a high-school graduate, was asked if he was aware of the charges in the indictment, if he was satisfied with his attorney, Ramon Garcia Garcia, and if he had discussed the charges with his attorney. Petitioner answered "Yes" to all three questions. (Docket No. 348 at 14.) The district judge conducted a detailed a meticulous inquiry individually of each of the five defendants entering guilty pleas. The plea agreement and stipulations were translated for the defendant by his attorney, that is, they were read in the Spanish language to him and an interpreter translated the proceedings simultaneously. The court asked petitioner if what his attorney said was true. Petitioner said, "That is the way it is." (Docket No. 348 at 37.) Petitioner agreed that he understood the terms of the plea agreement. He had initialed each page of the plea agreement and signed the same. Then the court asked the following question: "Has anyone made any other or different promise or assurance to you of any kind in an effort to induce you to enter a plea of guilty in this case?" Petitioner answered "No." (Docket No. 348 at 38.)

The prosecutor outlined the evidence which would show that the drug point which the five defendants were part of and in which petitioner held the position of manager or leader, operated every day of the week and sold at least five kilograms of cocaine, one kilogram of heroin and fifty grams of cocaine base, and about five pounds of marijuana each month. The conspiracy lasted from 1994 to August 30, 2001. The judge asked the prosecutor, "But they are accepting only 150 kilograms of cocaine, right?" (Docket No. 348 at 48.) The conspiracy ran for about seven years. At five kilograms of cocaine a month, 150 kilograms would have been reached after 30 months of sales. Thus the remark of

the judge. The defendant was the leader of this organization although he now describes himself as a minor supervisor. After listening to the prosecutor, petitioner agreed with the statement of that prosecutor. (Docket No. 348 at 52.) The judge then made a finding of guilt. (Docket No. 348 at 53.) .

 Petitioner argues that his attorney failed to raise an *Apprendi* argument in that his default sentence should have been five years for the marijuana component of the charge. In *Apprendi v. New Jersey,* the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Then, in *Blakely v. Washington,* the Supreme Court extended *Apprendi,* holding that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."* *Blakely v. Washington,* 542 U.S. 296, 303, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) (emphasis in original). In *United States v. Booker,* the Supreme Court held that, similar to the state sentencing schemes in *Apprendi* and *Blakely,* the Federal Sentencing Guidelines implicate the Sixth Amendment and struck down the section which made the Guidelines mandatory. *United States v. Booker,* 543 U.S. 220, 233–37, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). As is clear from the plea agreement, and from my and the court of appeals' reading of the change of plea transcript, that petitioner admitted to responsibility for a large amount of cocaine, not marijuana. (Crim. No. 01–0640, Docket No. 348.) Men willingly believe what they wish. The default statuto-

ry maximum sentence of five years for marijuana simply does not apply.

Petitioner relies on *United States v. Colón–Solís*, 354 F.3d 101 (1st Cir.2004). That case clearly stands for the proposition that the jury is to find the amount attributable to the conspiracy, and while the entire amount may not be attributed to the petitioner, the court may make a finding as to the amount attributable to the petitioner by the preponderance of the evidence. *See Derman v. United States*, 298 F.3d 34, 43 (1st Cir.2002) ("the government need only allege and prove to the jury the bare facts necessary to increase the statutory sentencing maximum *for the conspiracy as a whole*" (emphasis in original)); *United States v. Colón–Solís*, 354 F.3d at 103 ("to apply the mandatory minimum to a particular coconspirator, the sentencing court must make a specific finding, supportable by a preponderance of the evidence"); *United States v. Bradley*, 917 F.2d 601, 604 (1st Cir.1990)(explaining that "quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part" of a conspiracy).

The sentencing court determined its sentence based upon a stipulated amount of cocaine for which petitioner was responsible. The presentence report noted that the amount attributable to petitioner. At the change of plea hearing, the prosecutor outlined the evidence as to the defendants pleading guilty, including the evidence it would prove as to petitioner as the leader, carrying firearms, and storing narcotics. The government incorporated the information in the plea agreements into its presentation. Petitioner agreed with the government's version of facts. In any event, the court of appeals determined that there was no error in the sentencing process having reviewed the transcripts of all appellants. In short, there was no *Apprendi* error.

There is no credible evidence to support the petitioner's claim that his attorney's representation fell below an objective standard of reasonableness, nor does the record support that but for the alleged errors by the attorney, petitioner instead of pleading guilty would have done something else, such as proceeding to trial, or standing fast for a more favorable plea offer, or entering a straight plea. Indeed, petitioner does not announce that he wishes to withdraw his guilty plea but rather wishes for the court to re-sentence him, unencumbered by enhancements which he admitted to in 2006 but disavows in 2009.

■■■ "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Lefkowitz v. Newsome*, 420 U.S. 283, 288, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975) (quoting *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973)); *see Nieves–Ramos v. United States*, 430 F.Supp.2d 38, 43 (D.P.R.2006); *Caraballo Terán v. United States*, 975 F.Supp. 129, 134 (D.P.R.1997). A review of the change of plea transcript and a comparison with the allegation of petition in his motion reveals inconsistencies which are clearly at loggerheads, casting a distinct pall on petitioner's apparent candor in his pleadings. Petitioner initialed each page of the plea agreement, and signed it. He was under oath. He understood the sentence recommendation.

Petitioner overlooks the fact that his attorney negotiated a favorable plea agreement with the government, and if one considers what sentence he might have received after trial or after a straight plea, petitioner could have faced a much longer sentence, as alluded to by the court of

appeals and by the sentencing judge. Petitioner would have received a 3-level reduction for timely acceptance of responsibility had the plea not been taken during trial. The jury was empaneled on June 9, 2003 and the plea occurred the following day. Thus the 2-level reduction.

 It is well settled that a court "will not permit a defendant to turn his back on his own representations to the court merely because it would suit his convenience to do so." *United States v. Parrilla–Tirado*, 22 F.3d 368, 373 (1st Cir. 1994) (quoting *United States v. Pellerito*, 878 F.2d 1535, 1539 (1st Cir.1989)). "[I]t is the policy of the law to hold litigants to their assurances at a plea colloquy." *Torres–Quiles v. United States*, 379 F.Supp.2d 241, 248–49 (D.P.R.2005) (citing *United States v. Marrero–Rivera*, 124 F.3d 342, 349 (1st Cir.1997)). Thus, the petitioner "should not be heard to controvert his Rule 11 statements ... unless he [has] offer[ed] a valid reason why he should be permitted to depart from the apparent truth of his earlier statement[s]." *United States v. Butt*, 731 F.2d 75, 80 (1st Cir. 1984). "[T]he presumption of truthfulness of the Rule 11 statements will not be overcome unless the allegations in the § 2255 motion are sufficient to state a claim of ineffective assistance of counsel and include credible, valid reasons why a departure from those earlier contradictory statements is now justified." *United States v. Butt*, 731 F.2d at 80 (citing *Crawford v. United States*, 519 F.2d 347, 350 (4th Cir. 1975)). Because of the wide range of tactical decisions that a criminal defense attorney may be presented with in any given trial, judicial scrutiny of the attorney's performance must be "highly deferential" and indulge a strong presumption that the challenged action "might be considered sound trial strategy." *Id.* at 689, 104 S.Ct. 2052. Indeed, "[a] fair assessment of at-

torney performance requires that every effort be made to eliminate the distorting effect of hindsight...." *Id.*

 In relation to a motion to vacate sentence, ordinarily the court would have to "take petitioner's factual allegations 'as true,'" however it will not have to do so when like in this case " 'they are contradicted by the record ... and to the extent that they are merely conclusions rather than statements of fact.' " *Otero–Rivera v. United States*, 494 F.2d 900, 902 (1st Cir.1974) (quoting *Domenica v. United States*, 292 F.2d 483, 484 (1st Cir.1961)).

It is clear then that the petitioner was adequately represented by his counsel and that his allegations are meritless.

## IV. CONCLUSION

 "Under *Strickland v. Washington*, ... counsel is not incompetent merely because he may not be perfect. In real life, there is room not only for differences in judgment but even for mistakes, which are almost inevitable in a trial setting, so long as their quality or quantity do not mark out counsel as incompetent." *Arroyo v. United States*, 195 F.3d 54, 55 (1st Cir.1999). Petitioner has not satisfied the first prong of *Strickland*. The arguably inadequate and poor performance of his attorney in relation to the plea and sentence did not contribute to the ultimate outcome of the criminal case. There were no errors of defense counsel that resulted in a violation of petitioner's right to adequate representation of counsel under the Sixth Amendment. It is a settled rule that "issues adverted to in a perfunctory manner, such as the equitable tolling issue, unaccompanied by some effort at developed argumentation, are deemed waived." *Nikijuluw v. Gonzales*, 427 F.3d 115, 120 n. 3 (1st Cir.2005); *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.1990). It is also clear that the substance of the mat-

ters considered and rejected by the court of appeals must be disregarded by this court. *See Vega–Colon v. United States,* 463 F.Supp.2d 146, 156 (D.P.R.2006). It is hornbook law that a prisoner may not use a Section 2255 Petition to relitigate questions that were raised and considered on direct appeal. *Id.,* citing *Singleton v. United States,* 26 F.3d 233, 240 (1st Cir. 1994) (quoting *Dirring v. United States,* 370 F.2d 862, 864 (1st Cir.1967)); *Cirilo–Munoz v. United States,* 404 F.3d at 533; also see *Withrow v. Williams,* 507 U.S. 680, 720–21, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993); *Berthoff v. United States,* 308 F.3d 124, 127–28 (1st Cir.2002); *Argencourt v. United States,* 78 F.3d at 16 n. 1; *Singleton v. United States,* 26 F.3d at 240. Even those issues considered waived are barred from post-conviction relief. Petitioner did not raise the issue of plea voluntariness but the court of appeals decision covered that matter making reference to the district court's colloquy with all defendants pleading guilty. It made a similar reference to the sentencing transcripts.

In view of the above, I find that petitioner has failed to establish that his counsel's representation fell below an objective standard of reasonableness. *See Strickland v. Washington,* 466 U.S. at 686–87, 104 S.Ct. 2052; *United States v. Downs–Moses,* 329 F.3d 253, 265 (1st Cir.2003). Furthermore, even if petitioner had succeeded in showing deficiencies in his legal representation, he is unable to establish that said deficiencies resulted in a prejudice against him in the criminal proceedings. *See Moreno–Espada v. United States,* 666 F.3d 60 (1st Cir.2012), citing *Tevlin v. Spencer,* 621 F.3d 59, 66 (1st Cir.2010); *Owens v. United States,* 483 F.3d 48, 63 (1st Cir.2007) (quoting *Strickland v. Washington,* 466 U.S. at 687–88, 104 S.Ct. 2052). It is impossible to find that any claimed error has produced " 'a fundamental defect which inherently results in a complete mis-

carriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure.' " *Knight v. United States,* 37 F.3d 769, 772 (1st Cir.1994) (quoting *Hill v. United States,* 368 U.S. at 428, 82 S.Ct. 468). Petitioner was sentenced well within the applicable sentencing range. There was no error. *See United States v. Antonakopoulos,* 399 F.3d 68, 77 (1st Cir. 2005), citing *United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

## V. CONCLUSION

Federal habeas relief is reserved only for the poorest performances. In this case, all defendants in this very difficult case were represented by seasoned practitioners in this court. I find that petitioner's motion under 2255 is clearly time-barred and otherwise meritless. In view of the above, I recommend that petitioner's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 be DENIED without evidentiary hearing.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within fourteen (14) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. *See Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Davet v. Maccarone,* 973 F.2d 22, 30–31 (1st Cir.1992); *Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985 (1st Cir.1988); *Borden v. Sec'y of Health & Human Servs.,* 836 F.2d 4, 6 (1st Cir.1987); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,*

678 F.2d 376, 378–79 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir.1980).